**Richard Norman ROJEM, Jr., Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, and its component, The Federal Bureau of Investigation, Defendant.**

Civ. A. No. 90–3021 (CRR).

United States District Court, District of Columbia.

Oct. 1, 1991.

Scott W. Braden, Ass't. Appellate Public Defender, Norman, Okl., for plaintiff.

Kirsten J. Moncada, Office of Information and Privacy, U.S. Dep't of Justice, Washington, D.C., for defendant.

## OPINION

### CHARLES R. RICHEY, District Judge.

### INTRODUCTION

Pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552(a), Plaintiff Richard Norman Rojem, Jr. has requested the FBI to produce his rap sheet and all other information in his file, as well as information pertaining to two victims of violent crimes which he allegedly committed. The Defendant FBI withheld certain documents and redacted parts of other documents, invoking FOIA Exemptions (b)(2), (5), (7)(C), and (7)(D). Upon consideration of the parties' cross-motions for summary judgment, the responses thereto, the record herein, and the applicable law, the Court grants the Defendant's Motion in part and denies it in part and denies the Plaintiff's Motion in part and grants it in part.

### BACKGROUND

The Plaintiff, currently an inmate on death row, seeks information pertaining to his alleged involvement in the murder, rape and kidnapping of Linda Mack and Leyla Dawn Cummings. *See* Complaint at ¶ 1. On July 19, 1985, Plaintiff requested his FBI rap sheet and any other data in his file. *See* Exhibit A, Superneau Declaration. By letter of February 7, 1990, Plaintiff requested all records in the FBI Headquarters and the Oklahoma City Field Office relating to himself, or to the deaths of Leyla Dawn Cummings or Linda Mack. *Id.* at Exhibit H. According to the Defendants, the FBI compiled the information contained in documents responsive to Plaintiff's requests to assist the Oklahoma State Bureau of Investigation in their investigation of these crimes. Specifically, the State authorities enlisted the FBI for technical assistance in preparing a "profile of the Linda Mack murder and a personality assessment of the plaintiff." *Declaration of Regina Superneau, Defendant's Motion for Summary Judgment* at ¶ 9 (hereinafter, Superneau Declaration).

In response to the Plaintiff's requests, the agency examined files located at FBI Headquarters, the FBI Oklahoma City Field Office, and the FBI facility at Quantico, Virginia. The first search yielded a total of 359 pages; only four pages were released in their entireties while 352 pages were withheld in their entireties and three pages were withheld as duplicates. *See* Superneau Declaration at ¶¶ 5-6. Upon realizing an oversight in the examination, the FBI undertook a second search to locate documents pertaining to one of the Plaintiff's alleged victims. The second search yielded approximately 86 pages of material. Three pages were released in full while ten pages were released in part and 72 pages were withheld in their entireties. One page was a duplicate of material already released to the Plaintiff. *See* Superneau Declaration at ¶¶ 7-8. The FBI invoked FOIA Exemptions 2, 5, 7(C), 7(D) and 7(E) as justification for withholding. *See* Superneau Declaration at ¶¶ 3(H), 3(M).

Plaintiff appealed the agency's decision on April 17, 1990. Superneau Declaration at ¶ 3(N); *see also* Exhibit N attached thereto. Upon review, the Department of Justice Office of Information and Privacy

released one additional document and otherwise denied the appeal. *Id,* at ¶ 3(O), and Exhibit O attached thereto (letter of August 8, 1990).

Plaintiff sought review of the agency's actions in this Court. The Court granted Plaintiff's January 18, 1991 Motion to Compel Preparation of a *Vaughn* Index, as the Motion was conceded by the Defendants. *See* Order, *Rojem v. United States Department of Justice,* Civ. 90–3021 (D.D.C. Feb. 4, 1991) (invoking Local Rule 108(b)). As part of this litigation, the parties stipulated that the Plaintiff would not challenge the Defendant's use of FOIA Exemption 2, relating to the decision to withhold an FBI telephone number. Pursuant to this same stipulation, the Plaintiff agreed that the Defendant could invoke Exemption 7(C) in order to withhold the names and initials of FBI agents and FBI employees. *See* Order, *Rojem v. United States Dept. of Justice,* Civ. 90–3021 (D.D.C. April 3, 1991). The Defendants abandoned their claim as to Exemption 5, and now invoke Exemption 7(D) as the basis for withholding.[1] Thus, the Court now considers the parties' contentions on cross-motions for summary judgment only with regard to whether the agency properly withheld documents pursuant to Exemptions 7(C), 7(D) and 7(E). The Court also considers the Plaintiff's request that the Court inspect the documents at issue *in camera.*

### ANALYSIS

■ Pursuant to Fed.R.Civ.P. 56(c), a moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). In FOIA cases, the agency has the burden of proving the legality of any limitation on disclosure. *John Doe Agency v. John Doe Corp.,* 493 U.S. 146, 110 S.Ct. 471, 475, 107 L.Ed.2d 462 (1989); *see also* 5 U.S.C. § 552(a)(4)(B). The Defendants have shown that they are entitled to judgment as a matter of law with respect to the decision to withhold documents pursuant to Exemptions 7(C) and 7(D). Although the Plaintiff has not demonstrated any factual basis warranting broad *in camera* review, the Plaintiff has articulated a sufficient basis warranting an *in camera* inspection of the material withheld pursuant to Exemption 7(E).[2]

### FOIA EXEMPTION 7 CLAIMS

A. MATERIAL WHICH STATE LAW ENFORCEMENT AGENCIES PROVIDED TO THE FBI AS PART OF A COLLABORATIVE EFFORT TO INVESTIGATE A STATE LAW CRIME IS MATERIAL "COMPILED FOR LAW ENFORCEMENT PURPOSES" WITHIN THE MEANING OF EXEMPTION 7.

■ FOIA Exemption 7 permits an agency to withhold "records or information" if the agency demonstrates that the material was "compiled for law enforcement purposes" and that it qualifies for exclusion

---

1. Plaintiff argues that this change is "suspicious." *See Plaintiff's Response Memorandum of Points and Authorities to Defendant's Motion for Summary Judgment and Memorandum of Points and Authorities in Support of Plaintiff's Cross Motion for Summary Judgment,* filed July 29, 1991, at 4. The Court does not agree. "[T]he defendant in a FOIA case may assert new exemptions at the federal district court level stage not previously asserted at the administrative level, even if the circumstances have not changed in the interim." *Gula v. Meese,* 699 F.Supp. 956, 959 (D.D.C.1988) (citing *Jordan v. United States Dept. of Justice,* 591 F.2d 753, 779 (D.C.Cir.1978)).

2. With the exception of the Exemption 7(E) issue, Plaintiff does not identify any material facts in dispute. While Plaintiff quarrels with the Defendant's characterization of the bases for withholding in paragraphs 21–32 of the Superneau Declaration, Plaintiff is merely disputing the conclusions of law in the Superneau declaration. Because the Court evaluates these conclusions of law *de novo,* nothing precludes summary judgment as to Exemptions 7(C) and 7(D). *See United States Dept. of Justice v. Reporters Committee for Freedom of the Press,* 489 U.S.

under at least one of the narrowly-defined criteria in subsections (A)–(F). *See* 5 U.S.C. § 552(b)(7)(A)–(F) (1988); *FBI v. Abramson*, 456 U.S. 615, 622, 102 S.Ct. 2054, 2059, 72 L.Ed.2d 376 (1982); *Keys v. United States Dept. of Justice*, 830 F.2d 337, 340 (D.C.Cir.1987). According to the Plaintiff, the Defendants may not avail themselves of Exemption 7 because the FBI was not investigating the Plaintiff for a violation of federal law or on a matter of national security, and provided only technical assistance in an investigation spearheaded by the Oklahoma State Bureau of Investigation.

Plaintiff's attempt to confine Exemption 7 to matters of federal criminal law or national security matters fails. The case law contemplates a much broader definition of "law enforcement" activity for purposes of Exemption 7 which encompasses the material collected by the FBI in this action. In *Keys v. United States Department of Justice, supra*, 830 F.2d at 342, the Court of Appeals upheld the FBI's decision to withhold copies of local police reports and FBI summaries of the information, even without proof that the FBI had compiled the data in investigating a violation of federal law. According to the Court of Appeals, there exists "no requirement under exemption 7 that any violation of federal law be implicated, so long as the information is compiled for a 'federally *authorized* [law enforcement] purpose.'" *Id.* (citing, *Bevis v. Department of State*, 801 F.2d 1386, 1388 (D.C.Cir.1986) (information gathered to aid law enforcement by foreign nations qualifies under Exemption 7); *Shaw v. FBI*, 749 F.2d 58, 64 (D.C.Cir.1984) (FBI's cooperation in investigation of violation of state law is a valid law enforcement purpose).

The cases cited by Plaintiff do not enervate this general principle of law. None of the cases address the specific factual question presented by the collaborative State-federal law enforcement activity as in this case.[3] *See Plaintiff's Response Memorandum of Points and Authorities*, filed July 29, 1991, at 5–6. These cases merely address the issue of whether the FBI's investigation rationally related to the law enforcement purpose espoused by the agency to justify surveillance of certain groups or individuals. *See, e.g., King v. United States Dept. of Justice, supra; Pratt v. Webster, supra*. In this case, the Plaintiff does not dispute that the FBI compiled scientific or technical information for a valid law enforcement purpose. The FBI provided routine technical assistance to a local law enforcement agency. Federal law specifically authorizes the FBI to assist local law enforcement agencies in this manner. *See* 28 U.S.C. § 534 (1990) (authorizing the FBI to compile crime-related records and to exchange the same with local law enforcement). *See also* 28 C.F.R. § 0.85(g) (specifying that the FBI laboratory may provide "without cost, technical and scientific assistance * * * for all duly constituted law enforcement agencies"). Thus, the material compiled by the FBI in generating a psychological profile of the Plaintiff qualifies as a valid "law enforcement" matter for purposes of Exemption 7. *See, e.g., Hopkinson v. Shillinger*, 866 F.2d 1185, 1222 n. 27 (10th Cir.1989); *Wojtczak v. United States Dept. of Justice*, 548 F.Supp. 143, 146–148 (E.D.Pa.1982).

**B. THE AGENCY MAY WITHHOLD THE NAMES OF STATE AND LOCAL LAW ENFORCEMENT PERSONNEL AND THE HOME TELEPHONE NUMBER OF AN FBI AGENT UNDER THE AUTHORITY OF EXEMPTION 7(C).**

■ Plaintiff also challenges the agency's decision to withhold the names of state and local law enforcement personnel as well as the home telephone number of an

---

749, 762, 109 S.Ct. 1468, 1476, 103 L.Ed.2d 774 (1989).

**3.** *See, e.g., FBI v. Abramson, supra,* (FBI transmitted law enforcement data to the White House for allegedly political purposes); *King v. United States Dept. of Justice,* 830 F.2d 210 (D.C.Cir.1987) (whether FBI lawfully compiled information about Ms. King on the basis of alleged communist ties); *Pratt v. Webster,* 673 F.2d 408 (D.C.Cir.1982) (whether FBI's investigations of member of the Black Panthers was motivated by a true law enforcement purpose or was merely a tool of harassment); *Astley v. Lawson,* Civ. 89–2806, 1991 WL 7162 (D.D.C., Jan. 11, 1991) (FBI's own investigation; merely reciting boilerplate Exemption 7 standard).

FBI agent on the basis of FOIA Exemption 7(C). Exemption 7(C) allows an agency to withhold records or information compiled for law enforcement purposes to the extent that release "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C) (1988). In determining whether the agency properly invoked Exemption 7(C), the Court must balance the privacy interests of the law enforcement agents against the public interest in learning the identities of those who participated in the investigation of the Plaintiff. *See United States Dept. of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 762, 109 S.Ct. 1468, 1476, 103 L.Ed.2d 774 (1989); *Lesar v. Dept. of Justice*, 636 F.2d 472, 486 (D.C.Cir.1980); *Stone v. FBI*, 727 F.Supp. 662 (D.D.C.1990). In contrast to other FOIA Exemptions, however, Exemption 7(C) "is not similarly 'tilted emphatically in favor of disclosure.'" *Senate of Puerto Rico v. United States Dept. of Justice*, 823 F.2d 574, 587 (D.C.Cir.1987) (quoting *Bast v. United States Dept. of Justice*, 665 F.2d 1251, 1254 (D.C.Cir.1981)).

The Plaintiff asserts that the agency has improperly balanced the interests at stake in this case. Plaintiff believes that his potential death sentence and the possibility of misconduct by investigators outweigh the agents' privacy interests. *See Plaintiff's Response Memorandum of Points and Authorities* at 11. While release of agents' identities may be warranted if it "sheds light on an agency's performance of its statutory duties," *Reporters Committee, supra,* the Plaintiff presents no factual basis upon which the Court can find that there exists even a question as to any agency's performance of its duties. Plaintiff cannot expect this Court to release the names of federal, local and State law enforcement personnel based only upon an unspecified and unsubstantiated allegation of the *"possibility* of Government misconduct," *Plaintiff's Response, supra,* at 11 (emphasis added); this allegation does not satisfy the demands for summary judgment. *Celotex Corp. v. Catrett, supra,* 477 U.S. at 324–325, 106 S.Ct. at 2553–54 ("One of the principal purposes of the sum-mary judgment rule is to isolate and wrspose [dispose] of factually unsupported claims and defenses").

Plaintiff's potential death sentence is an important consideration in the balancing process. However, the mere fact that the Plaintiff may find himself on death row does not, *ipso facto,* demand release of the names of every law enforcement official mentioned in reports transferred to the FBI. Such a holding would betray the important competing considerations on the other side of the scale. *See Lesar v. United States Dept. of Justice,* 636 F.2d 472, 488 (D.C.Cir.1980); *Stone v. FBI,* 727 F.Supp. at 664 (recognizing law enforcement agents' bona fide interest in privacy and noting special dangers and animosity engendered by release of names). Thus, because the Plaintiff only makes a bare assertion as to the public interest at stake, *see* discussion *infra,* the Court cannot order release of agents' names and telephone numbers.

## C. THE AGENCY PROPERLY WITHHELD INFORMATION PROVIDED TO THE FBI FROM STATE AND LOCAL LAW ENFORCEMENT AUTHORITIES PURSUANT TO EXEMPTION 7(D).

■ Because Plaintiff knows that State and local law enforcement provided the records at issue to the FBI, Plaintiff believes that the information is not "confidential" for purposes of Exemption 7(D). Plaintiff's argument rests on the presumption that Exemption 7(D) is designed "to protect the identity of the confidential source of information." *Plaintiff's Response, supra,* at 12. Plaintiff's argument lacks merit in light of recent pronouncements of the Court of Appeals for this Circuit.

Exemption 7(D) allows the agency to withhold records compiled for law enforcement purposes which

> could reasonably be expected to disclose the identity of a confidential source, including a State, local or foreign agency or authority or any private institution which furnished information on a confi-

dential basis, and, in the case of a record of information compiled by a criminal law enforcement authority in the course of a criminal investigation, information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D) (1988). There is no balancing test in considering Exemption 7(D) claims. Rather, Exemption 7(D) broadly protects law enforcement information if the FBI can demonstrate that

the information was provided in confidence at the time it was communicated at the time to the FBI, the source will be deemed a confidential one, and both the identity of the source and the information [ ] provided will be immune from FOIA disclosure.

*Dow Jones & Co., Inc. v. United States Dept. of Justice*, 917 F.2d 571, 575–76 (D.C.Cir.1990) (citations omitted). In this case, the Court can reasonably infer that the Oklahoma authorities released criminal files to the FBI with an understanding that those materials would remain outside the public domain. *See Dow Jones, supra*, 917 F.2d at 577 (taking categorical approach to FOIA cases as suggested by the Supreme Court in *Reporters' Committee, supra*, by creating presumption that FBI generally affords confidentiality to its sources). To hold otherwise would unduly discourage States from enlisting the FBI's assistance on criminal cases. *See, e.g., Hopkinson v. Shillinger*, 866 F.2d 1185, 1222 n. 27 (10th Cir.1989); *Wojtczak v. United States Dept. of Justice*, 548 F.Supp. 143, 146–148 (E.D.Pa.1982); *Buehl v. FBI*, Civ.A. No. 88–3724, slip op. at 3–4 (D.D.C. Apr. 30, 1990).

Knowledge that State and local authorities transferred the information to the FBI does not destroy this presumption of confidentiality. Rather, to refute the presumption of confidentiality, the Plaintiff must show: (1) that the "exact information" given to the FBI by the State and local authorities has become public; and (2) the fact that the State and local authorities transferred this particular information is also known to the public. *Dow Jones*, 917 F.2d at 577. Because the Plaintiff utterly fails

to meet this test, the Court must uphold the agency's decision to invoke Exemption 7(D) to shield this material from disclosure.

D. BECAUSE THE COURT CANNOT DETERMINE THE LEGALITY OF THE AGENCY'S DECISION WITH REGARD TO EXEMPTION 7(E) ON THE BASIS OF THE RECORD HEREIN, AN *IN CAMERA* INSPECTION AND FURTHER BRIEFING IS REQUIRED.

■ Invoking Exemption 7(E), the agency withheld information pertaining to "a psychological evaluative and predictive strategy which is not specific to Plaintiff, but which is generally applicable to the particular category of homicide investigated" because the information is critical to law enforcement and is not generally known to the public. *See* Superneau Declaration at ¶ 27. Plaintiff claims that this technique is generally known to the public and offers numerous citations to publicly-available data about offender profiling. According to the agency, the Plaintiff has misstated the record, and the technique in question has no relation whatsoever to offender profiling. *See Defendants' Memorandum of Points and Authorities in Opposition to Plaintiff's Cross Motion for Summary Judgment and in Further Support of Defendants' Motion for Summary Judgment*, filed August 9, 1991, at 12.

The Court cannot evaluate the competing claims here without additional information. Thus, given the alleged sensitivity of these documents and because the agency's claims "are general and conclusory at best, [ ] the only way the Court can ascertain whether the assertions are correct is by way of an *in camera* review." *Fitzgibbon v. United States Secret Service*, 747 F.Supp. 51, 60 (D.D.C.1990) (ordering *in camera* review with respect to an Exemption 7(E) claim). Specifically, the agency must provide the Court with unredacted copies of the documents at issue as well as a complete description of the alleged distinction between

the "secret" technique and the profiling procedures to which the Plaintiff adverts.[4]

## PRIVACY ACT CLAIMS

■ The Plaintiff also seeks release of the requested information pursuant to the Privacy Act, 5 U.S.C. § 552a. *See* Plaintiff's July 19, 1985 letter requesting information, Exhibit A, Superneau Declaration. While the Privacy Act and FOIA "substantially overlap," *Greentree v. United States Customs Serv.*, 674 F.2d 74, 78 (D.C.Cir. 1982), there are instances in which the FOIA denies access and the Privacy Act compels release. *See, e.g., Martin v. Office of Special Counsel, Merit Sys. Protection Bd.*, 819 F.2d 1181, 1184 (D.C.Cir. 1987). Thus, the Court must evaluate the Plaintiff's Privacy Act claim independently. *See Simon v. United States Dept. of Justice*, 752 F.Supp. 14, 22–23 (D.D.C.1990) (conducting a separate inquiry despite significant overlap of the two statutes). In this case the FBI claims that the materials requested by the Plaintiff are wholly exempted by section (j)(2) of the Privacy Act. *See* Superneau Declaration at ¶¶ 9, 11.

■ Exemption (j)(2) of the Privacy Act allows the head of a law enforcement agency to promulgate rules to exempt from disclosure "any system of records" consisting of "information compiled for the purpose of a criminal investigation, including reports of informants or investigators, and associated with an identifiable individual." 5 U.S.C. § 552a(j)(2)(B). The Attorney General has established regulations pursuant to this section of the Privacy Act, and has thereby exempted the materials on the FBI's central records system from disclosure, provided that the records were compiled for a legitimate law enforcement purpose. *See* 28 C.F.R. § 16.96(a) (1991). *Cf. Vymetalik v. FBI*, 785 F.2d 1090, 1095

(D.C.Cir.1986) (discussing broad contours of Privacy Act and the law enforcement exemptions). In essence, the inquiry under this particular segment of the Privacy Act incorporates the inquiry undertaken in evaluating the applicability of FOIA Exemption 7. *See Simon v. United States Dept. of Justice, supra,* 752 F.Supp. at 23; *see also* 28 C.F.R. § 16.96(a). Because, for the reasons explained herein, the agency properly withheld this law enforcement material pursuant to FOIA Exemption 7, the Plaintiff's Privacy Act claims likewise fail.

## CONCLUSION

Because the agency has demonstrated that it has validly withheld materials from the Plaintiff pursuant to FOIA Exemptions 7(C) and 7(D), the agency's motion for summary judgment shall be granted with respect to these documents. However, the agency has not adequately explained the basis for withholding pursuant to FOIA Exemption 7(E). Accordingly, the Court shall deny the agency's motion for summary judgment with respect to these materials without prejudice to renewal, and shall grant the Plaintiff's request for an *in camera* review with respect to the materials withheld on the basis of Exemption 7(E).

---

**4.** Plaintiff offhandedly requests that the Court conduct an *in camera* review of all documents withheld by the agency on the basis of the claims in the Plaintiff's Motion for Summary Judgment. Because the affidavits submitted by the Government (with the exception of those pertaining to the Exemption 7(E) claim) provide an adequate basis upon which to assess the validity of the agency's claims and because the Plaintiff has made no fact-based allegation of agency bad faith in the conduct of its search, an extensive *in camera* document review is unnecessary. *See, e.g., Brinton v. Dept. of State,* 636 F.2d 600, 606 (D.C.Cir.1980), *cert. denied,* 452 U.S. 905, 101 S.Ct. 3030, 69 L.Ed.2d 405 (1981).